No. 7279.

## HARLEY, ADMINISTRATOR, v. HEIST.

LIFE INSURANCE.—*Husband and Wife.*—*Assignor and Assignee.*—*Collateral Security.*—*Descent.*—S. took a policy on his life, payable to himself and his assigns, for the benefit of his wife, and paid the premiums until the death of the wife, her husband and two children surviving.   S. assigned his

interest in the policy to H. by endorsement, as security for a debt, and thereafter for several years H. paid the annual premiums, until S. died.

*Held,* that on the death of the wife one-third of the policy went to the husband, and two-thirds to the children, subject to the right of her administrator to collect the whole.

*Held,* also, that the assignment of the husband carried to the assignee only the husband's rights as an heir of his wife.

*Held,* also, that the assignee was entitled to be refunded out of the proceeds of the policy the amount of premiums paid by him, with interest.

From the Kosciusko Circuit Court.

*W. Olds, M. Sickafoose* and *H. S. Biggs,* for appellant.

*J. S. Frazer* and *W. D. Frazer,* for appellee.

ZOLLARS, J.—The record in this case presents in different forms the following material facts:

On the 1st day of February, 1867, in consideration of the payment of a premium of $70.20 by David Snyder, and the same amount thereafter to be paid annually, the Connecticut Mutual Life Insurance Company executed and delivered to said David Snyder a policy of insurance upon his life, in which it agreed to pay $2,000 upon due proof of his death.

That portion of the policy which is material to the parties in this controversy is as follows: "And the said company do hereby promise and agree with the said assured, his heirs, executors, administrators and assigns, well and truly to pay, or cause to be paid, at the city of Hartford, the said sum insured to the said assured, his executors, administrators or assigns, within ninety days after due notice and proof of the death of the said David Snyder, for the benefit of and payable to Wilhelmina R. Snyder, wife of the said David Snyder, deducting therefrom all notes taken for premiums unpaid at that date. And it is hereby conditioned and agreed, that if at any time after three premiums have been paid on this policy, it shall be surrendered while yet in force, the company will issue a paid-up, non-forfeiture policy therefor, for such an amount as the then present value of this policy would purchase, as a single premium."

The wife, Wilhelmina, died intestate in December, 1869,

and left surviving her, her husband, David, and their two minor children.

On the 20th day of February, 1871, said David Snyder, being indebted to appellee, assigned the policy to him by endorsing upon it the following:

"COLUMBIA CITY, February 20th, 1871.

"For value received, I herewith assign my interest to the within policy to Henry Heist.        DAVID SNYDER."

In the month of November, 1874, David Snyder died intestate. Up to the time of the assignment and delivery of the policy to appellee, said David Snyder paid the premiums as stipulated for in the policy. After the assignment, appellee paid the premiums, viz.: On the 24th day of January, 1872, $48.70; on the 24th day of January, 1873, $46.20; and on the 24th day of January, 1874, $46.55.

In 1875, after appellant had been appointed administrator of the estate of said Wilhelmina, the insurance company filed its complaint in the Whitley Circuit Court against the parties to this cause, asking that they be required to set up their respective claims to the policy and the money due thereon.

After appellee had filed his answer and cross complaint, the insurance company, by agreement of the parties, and an order of the court, paid to the clerk $1,909.73, being the amount due on the policy, less an unpaid premium note, and interest on the same, amounting in all to $127.68. We are not informed by whom this note was executed.

After this, the venue was changed to the Kosciusko Circuit Court. In that court appellant filed his answer and cross complaint, to each paragraph of which, except the general denial, a demurrer by appellee was sustained, and appellant excepted. The cause was then submitted to the court, and after the finding of facts, and conclusions of law on the same, a judgment was rendered, giving to appellee the full amount of money so paid over by the insurance company, the same not exceeding the amount of the premiums paid by him with in-

Harley, Administrator, v. Heist.

terest, and the amount due him from Snyder for which the policy was assigned. From this judgment appellant appeals.

Was the policy the personal property of the wife Wilhelmina in such a sense that, upon her death, it went to her heirs at law as a part of her estate, or was it upon her death the property of the husband, so that his assignment transferred the legal title to the same to appellee? This is the important question presented by the record, the determination of which, counsel agree, will be decisive of this controversy.

That the policy was personal property, under our statute (2 R. S. 1876, p. 314), we think there can be no question. In consideration of the payment of the annual premiums, it contained a definite and fixed promise to pay a definite and fixed amount of money, upon the happening of an event, which was uncertain in nothing except the time at which it might occur. Such a policy of insurance is a chose in action, governed by the same principles applicable to other agreements involving pecuniary obligations. Bliss Life Insurance, 2d ed., p. 540; *Hutson* v. *Merrifield*, 51 Ind. 24 (19 Am. R. 722).

The policy in this case, by its terms, was executed for the benefit of the wife, and, upon a fair construction, was payable to her, and not to the personal representatives of the husband. Upon its execution, the title vested in the wife, and not in the husband. By the procurement of the husband, the wife became the owner of the policy and entitled to collect the amount that might become due on the same upon the death of the husband. Had the wife procured the policy to be issued, and paid the premiums, no one could doubt as to the ownership of the policy, and the right to collect the money due thereon. We are unable to see, in this case, why there should be any difference in the ownership and title of the policy by reason of the application having been made and premiums paid by the husband. Had the policy been made payable to the husband, he doubtless might have given it to the wife, and, by proper endorsements thereon, conveyed to her the legal title to the same. In such case it would have become her separate

property, by gift from her husband; and so, too, he had the legal right, in the first instance, to make the application, pay the premiums, and have the policy made payable to the wife for her benefit, and thus vest in her the legal title and ownership of the policy, as her separate property. The title and ownership of the policy being vested in the wife by gift from the husband, it was her separate property, to be disposed of under the statute, which provides that the personal property of the wife, acquired during coverture, by descent, devise, or *gift*, shall remain her own separate property, to the same extent and under the same rules as her real estate so remains, and, on her death before the husband, shall be distributed in the same manner as her real estate descends, and is apportioned under the same circumstances. 1 R. S. 1876, p. 412; R. S. 1881, sec. 2488.

Personal property thus acquired by the wife, upon her death, descends to her heirs at law, as does her real estate, except for the purpose of paying debts and costs of administration, the title vests in the administrator, if one be appointed. In this case the policy of insurance, upon the death of the wife Wilhelmina, descended to her heirs at law; the undivided one-third to the husband, David Snyder, and the other two-thirds to the minor children, subject to the rights of the appellant, as the administrator of her estate, who, for the purpose of paying debts and costs of administration, has the right to collect the money due upon the policy, to the exclusion of all others. If there had been no need of administration, and no administrator had been appointed, the heirs at law of the wife might have collected the money. Subject to this right of the administrator, the husband had the legal right to assign his interest in the policy, as he did, to the appellee. Upon such assignment appellee became the owner of, and entitled on distribution to, one-third of the amount due upon the policy, after the payment of debts and costs of administration.

We have carefully examined the cases cited by the learned counsel on either side, besides many others, and, while there

is some conflict, the conclusions reached by us in this case are in accord with the decided weight of the authorities. In the case of *Hutson* v. *Merrifield*, 51 Ind. 24, the contest was between the administrator of the husband and the surviving wife. The wife had taken out a policy upon the life of the husband, payable to herself, or, in case of her death, to her children. The premiums were paid by the wife. She died before the husband, and without children. The case was disposed of as though the policy had contained no clause in relation to children. After deciding that the policy was a chose in action, the court say : "If the policy is a chose in action, it is personal property which at the death of the party holding and owning it would vest in the heirs of such person, subject to the payment of debts. That the amount of the policy is not payable until the death of the life insured, can make no difference."

In the case of *Pence* v. *Makepeace*, 65 Ind. 345, the question arose between the administrator of the assignee of a policy of life insurance, and the widow of the insured. The husband had procured a policy of insurance upon his life, payable to his wife, and paid the premiums. During the lifetime of the husband the policy was assigned as collateral security, and the assignee, before the death of the husband, paid three annual premiums. After the death of the husband, and on the trial of the cause in relation to the money due on the policy, the wife denied that she joined with her husband in the assignment of the policy. The court below had instructed the jury that the policy, being payable to the wife, vested in her alone the absolute ownership of it, and that it could not be assigned or transferred to any one by her husband, or any other person, without her authority. This instruction was held by this court to express the law correctly. See, to the same effect, *Wilburn* v. *Wilburn*, 83 Ind. 55, and authorities cited.

In Bliss on Life Insurance, 2d ed., sec. 318, the author says : "We apprehend the general rule to be that a

policy, and the money to become due under it, belong the moment it is issued to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance, by any act of his, by deed or by will, to transfer to any other person the interest of the person named. An irrevocable trust is created. * * * The legal representatives of the insured have no claim upon the money, and can not maintain an action therefor, if it is expressed to be for the benefit of some one else."

In the case of *Keller* v. *Gaylor*, 40 Conn. 343, a husband had taken a policy upon the life of his wife, payable to himself, or, in case of his death before the wife, to his children. He died before the wife, and without children. Held, that at his death he had a vested interest in the policy, and that, by his will, it went to the wife. See, also, *Chapin* v. *Fellowes*, 36 Conn. 132 (5 Am. R. 49); *Crittenden* v. *Phœnix Mutual Life Ins. Co.*, 41 Mich. 442; *Connecticut Mutual Life Ins. Co.* v. *Burroughs*, 34 Conn. 305; *Ruppert* v. *Union Mutual Ins. Co.*, 7 Rob. (N. Y.) 155.

It is maintained by the learned counsel for appellee, that Snyder, having paid the premium, had the right, after the death of the wife, to omit the payment, and thus let the policy forfeit; and that, to avoid this loss, he had the right to change the beneficiary, or constitute himself such, by the assignment. If the policy was personal property, and the title thereto was vested in the wife, we are unable to understand how the husband, by any act of his, without the consent of the beneficiary, could change the ownership.

The property, under the statute, passed at once upon the death of the wife to her heirs at law, and the husband had no more control over it than before her death. True, he could not have been compelled to pay the premiums, or provide for the payment, but having paid them by himself and his assignee, the policy did not lapse, and the title to and ownership of the same did not change.

In the same edition of Bliss above quoted from, section

337, the author says: " Where the policy designates a person to whom the insurance money is to be paid, the person who procures the insurance and who continues to pay the premiums has no authority, by will or deed, to change the designation or title to the moneys. He is under no obligation to continue to pay the premiums, unless he has covenanted so to do, but if he does so, the person originally designated in the policy will derive the benefit. The change of designation can only be made by the person originally designated, and therefore all of such persons must concur in the change. If the policy is for the benefit of a woman and her children, the children as well as the woman must concur."

In the case of *Chapin* v. *Fellowes*, 36 Conn. 132, a policy was issued upon the life of the husband, payable to the wife; or, in case of her death, to her children. The wife died before the husband. After her death the husband surrendered the policy and took another for the same amount, the same date, and the same premium, but payable to himself. He paid one year's premium, and died insolvent. In a contest between the children and the husband's creditors, it was held that the husband had no right without the consent of the children thus to surrender the old policy and take the new one, payable to himself; and that the children were entitled to the amount due on the latter policy.

In the case of *Ricker* v. *Charter Oak Life Ins. Co.*, 27 Minn. 193 (38 Am. R. 289), the husband had procured a policy of insurance upon his life, payable to his wife, or in case of her death, to his children. After the death of the wife, and a remarriage, he surrendered the original policy, and a new one was issued in its place as a substitute therefor, bearing the same date and containing the same terms and conditions, except a provision that it should inure to the sole use and separate benefit of the second wife. Held, that the husband had no right to thus change the policy without the consent of the children, and that they were entitled to the avails of the new policy as against the second wife. It is said by counsel that

these decisions were made under peculiar statutes, and are therefore not authority in this State.   It will be found upon examination that these statutes, where they exist, give to married women no greater rights in policies, or the avails of policies, upon the lives of their husbands, than they have under the laws of this State, except that, in some of the States, no claim of fraud can be made by creditors if the annual premiums paid by the husband do not exceed certain amounts. It is said further, that to deny to the husband who has paid the premiums the right to dispose of the policy to his own use, after the death of the wife, imposes upon him a hardship and wrong.   A sufficient answer to this is, that if he wishes to retain to himself the control and ownership of the policy in such case, he may so provide in the policy.  It was to avoid this so-called wrong, that the Wisconsin court has held that the person procuring the policy may dispose of it without the consent of his nominee.   Such a view, we think, is not consistent with legal principles, is in conflict with former rulings of this court, and against the weight of the authorities in the other States.

The appellee, having in good faith paid the premiums since the assignment of the policy, is entitled to have the amount so paid, with interest at six per cent., refunded to him out of the money paid over by the insurance company.

It follows from the conclusion we have reached, that the court below was in error in rendering judgment for appellee, and in its rulings upon demurrers to pleadings.   The judgment is therefore reversed, at the costs of appellee, with instructions to the court below to overrule appellee's demurrers to the first, second, fourth, fifth and sixth paragraphs of appellant's answer and cross complaint, to sustain the demurrer to appellee's answer and cross complaint, and to proceed in accordance with this opinion.